Filed 2/25/13  P. v. Brown CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037615 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. Nos. SS110899, & SS111281) |
| v. | |
| SHERRY FAYE BROWN, | |
| Defendant and Appellant. | |

Defendant Sherry Faye Brown pleaded no contest in two proceedings to four felonies (three counts of commercial burglary and one forgery count) with the understanding that she would receive a sentence of no more than five years, four months in prison.  On November 9, 2011, in accordance with the negotiated disposition, the court sentenced defendant to an aggregate prison term in both cases of five years, four months. The court ordered that defendant receive a total of 242 days of presentence credits in the two cases, consisting of 162 days of custody credits and 80 days of conduct credits.

Defendant claims on appeal that she is entitled to 82 days of additional conduct credits under the latest amendment to Penal Code section 4019, which expressly provides that it applies to defendants whose crimes were committed on or after October 1, 2011.[1]

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

Here, each of the offenses of which defendant was convicted was committed prior to October 1, 2011. Her primary contention is that, notwithstanding the clear inapplicability of the latest amendment to section 4019, it must be applied retroactively because its prospective application would violate her constitutional right to equal protection of the law. Last year, we rejected an identical equal protection challenge in *People v. Kennedy* (2012) 209 Cal.App.4th 385 (*Kennedy*). We therefore will affirm the judgment.

FACTS[2]

I.       *Case Number CC1100899A (Walmart Burglary)*

On the afternoon of April 20, 2011, defendant entered the electronics department of Walmart and indicated that she wanted to purchase a specific laptop computer that she brought to the service desk. The sales associate placed the computer behind the counter and advised defendant that the transaction would have to be delayed until a coworker brought cash to the register. The salesperson left the desk to help other customers; when she returned, both defendant and the computer were no longer there. The salesperson and her manager viewed the store's security footage and observed defendant on film reach behind the counter for the computer and exit the store through the garden department without paying for the item.

Defendant returned to the Walmart on May 7, 2011. Sales associates recognized defendant from the incident 17 days earlier. One salesperson followed defendant around the store for approximately an hour and observed her reach behind the counter, take a laptop, and proceed toward the garden department. Marina police officers apprehended defendant as she attempted to leave the store. A search of defendant incident to her arrest

---

[2] We present an abbreviated version of the facts underlying the convictions, derived from the reports of the probation officer, because the facts are not relevant to the claims on appeal.

yielded a prescription for Loratadine to a third person, three books of checks addressed to "Elect Jordan Committee," and one book of checks in the name of Jessica Diaz.

II.     *Case Number SS111281A (Comfort Inn Burglary)*

On July 5, 2011, Marina police officers were dispatched to the Comfort Inn after defendant and Mark Baldwin attempted to rent a room with a suspected stolen credit card. The Wells Fargo bank debit/credit card was in the name of Antero Martinez. The hotel employee, Kyung Chee, advised the police that four days earlier, someone had twice attempted to rent a room using Martinez's name, but cancelled both transactions after 20 minutes. Kyung stated that on July 5, someone had made an on-line reservation with the hotel, using Martinez's bank debit/credit card. Upon checking in that afternoon, defendant reached into her purse and presented Martinez's bank debit/credit card to Kyung and identified Baldwin as her husband. During a search of defendant and Baldwin by the police, they discovered a glass pipe with cocaine residue in defendant's purse.

PROCEDURAL BACKGROUND

In case number SS110899A arising out of the incidents at Walmart (the Walmart case), defendant was originally charged with three felonies and one misdemeanor by complaint filed May 9, 2011.[3] She was charged by amended complaint filed October 5, 2011, with two counts of commercial burglary, a felony (§ 459; counts 1 and 2); forgery, a felony (§ 475, subd. (b); count 3); and possession of a drug without a prescription, a misdemeanor (Bus. & Prof. Code, § 4060; count 4). As to counts 1 through 3, it was alleged that defendant had suffered a prior strike offense (robbery) within the meaning of 1170.12, subdivision (c)(1).

---

[3] On May 18, 2011, defendant entered a conditional plea of no contest to one count of commercial burglary with the understanding that she would receive felony probation. On June 17, 2011, however, defendant was granted leave to withdraw her plea.

3

On July 13, 2011–between the filing dates of the original complaint and amended complaint in the Walmart case–defendant was charged by first amended complaint in case number SS111281A (the Comfort Inn case) with commercial burglary, a felony (§ 459; count 1); misappropriation of lost property, a misdemeanor (§ 485; count 2); and possession of drug paraphernalia, a misdemeanor (Health & Saf. Code, § 11364, subd. (a); count 3). As to count 1, it was alleged that defendant had suffered a prior strike offense (robbery) within the meaning of 1170.12, subdivision (c)(1); and had committed the charged commercial burglary while she was released on bail (§ 12022.1) for crimes alleged in the Walmart case.

Pursuant to a negotiated disposition, on October 5, 2011, defendant pleaded no contest to the three felonies alleged in the amended complaint in the Walmart case, and admitted the prior strike allegation. On the same date, defendant pleaded no contest to the commercial burglary offense charged in the first amended complaint in the Comfort Inn case, admitted the prior strike allegation, and admitted that she had committed the charged offense while she was on bail for crimes charged in the Walmart case. She entered the no contest pleas based upon the understanding that she would receive a maximum prison sentence in both cases of five years, four months, and that the remaining counts would be dismissed.

Before accepting the plea, defendant was apprised fully of the rights she was giving up as a result of her no contest pleas and concerning the consequences of those pleas. Counsel stipulated that there was a factual basis for the plea in each case, and the court found the existence of such a factual basis.

On November 9, 2011, and in accordance with the negotiated disposition, the court sentenced defendant to an aggregate prison term in both cases of five years, four months. This sentence was calculated through the imposition of consecutive sentences of 16 months each for counts 1, 2, and 3 in the Walmart case (the middle term of eight months for each offense, doubled pursuant to section 1170.12, subd. (c)(1)), and 16

months (lower term) for count 1 in the Comfort Inn case.[4] The court also exercised its discretion to strike the strike allegation in the Comfort Inn case pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, and dismissed in the interests of justice the allegation under section 12022.1. Defendant received presentence credits totaling 62 days in the Walmart case, based upon 42 days of custody credit plus 20 days of conduct credit pursuant to section 4019. Defendant received presentence credits totaling 180 days in the Comfort Inn case, based upon 120 days of custody credit plus 60 days of conduct credit pursuant to section 4019. Defendant filed a timely notice of appeal from the judgment.

After entry of judgment and in March 2012, defendant filed a motion for an award of additional conduct credits pursuant to section 4019, seeking 60 additional days in the Walmart case and 22 additional days in the Comfort Inn case. The motion was based upon the contention that the amendment to section 4019, effective October 1, 2011, should apply retroactively to defendant's circumstances, based upon the equal protection argument asserted in this appeal. The court denied the motion on March 14, 2012. On July 25, 2012, defendant filed a notice of appeal from that order.[5] An appeal from such a postjudgment order affecting defendant's substantial rights is proper. (§ 1237, subd. (b); *People v. Hyde* (1975) 49 Cal.App.3d 97, 103.)

---

[4] The oral pronouncement of the court and the clerk's minutes are consistent in reflecting that the aggregate prison sentence was 48 months for the three felonies in the Walmart case, and was 16 months for the one felony in the Comfort Inn case. Although the court twice indicated at the sentencing hearing that the aggregate prison sentence for the two cases was "five years, eight months," it is plain that the court misspoke, and the parties agree that the aggregate sentence (consistently with the terms of the plea agreement) was five years, four months. The court acknowledged its mistake at the hearing on defendant's postjudgment motion for additional conduct credits.

[5] On July 20, 2012, we granted defendant's motion for relief from default based upon her failure to timely file a notice of appeal from the court's March 14, 2012 order.

5

I.     *Claim of Additional Conduct Credits Under Section 4019*

     A.     *Background Concerning Section 4019*

Section 4019 permits a criminal defendant to earn additional credit prior to being sentenced by performing assigned labor (§ 4019, subd. (b)(1)) or by his or her good behavior during detention (§ 4019, subd. (c)(1)). Such credits are collectively referred to as "conduct credits." (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.) "The very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment." (*People v. Lara* (2012) 54 Cal.4th 896, 906 (*Lara*); see also *Dieck*, at p. 939 [section 4019's scheme is to encourage cooperation and good behavior for persons in local custody before they have been convicted, sentenced, and committed].) Section 4019 has undergone a series of revisions since 2009. (See generally *People v. Garcia* (2012) 209 Cal.App.4th 530, 535-540.)

Senate Bill No. 18 (2009-2010 3d Ex. Sess.), enacted in October 2009, amended section 4019, effective January 25, 2010, to enhance the number of presentence conduct credits for certain offenders. (Stats. 2009, 3d Ex. Sess., ch. 28, § 50, p. 4427; the January 2010 amendment.) Under the pre-January 2010 formula for calculating credits under section 4019, a defendant could accrue conduct credit of two days for every four days of actual presentence custody. (Stats. 1982, ch. 1234, § 7, p. 4554 [former § 4019, subd. (f).) Under the January 2010 amendment, a qualifying defendant—persons other than those required to register as sex offenders, or those being committed to prison for, or who had suffered prior convictions of, serious felonies as defined in section 1192.7 or violent felonies as defined in section 667.5—could accrue conduct credit of two days for every two days of presentence custody, twice the previous rate. (Stats. 2009-2010, 3d Ex. Sess., ch. 28, §§ 50, 62 [Pen.Code, former § 4019, subds. (b), (c), & (f) ].)

The statute was again amended, effective September 28, 2010, to restore the two-for-four conduct credit calculation less favorable to defendants that had been in effect

prior to January 25, 2010 (Stats. 2010, ch. 426, § 2). And then, as part of the Realignment Act, the Legislature amended section 4019 a third time in Assembly Bill 109 (2011-2012 Reg. Sess.; Assembly Bill 109). Assembly Bill No. 109, which amended section 4019 effective July 1, 2011, authorized conduct credit for all local prisoners at the rate of two days for every two days spent in local presentence custody. (§ 4019, subds. (b) & (c), as amended by Stats. 2011, ch. 15, § 482.) Like the previous amendment to section 4019, the amendment in Assembly Bill 109 was to have prospective application only. (*Ibid.*) Before July 1, 2011—the operative date of Assembly Bill No. 109— Governor Brown signed Assembly Bill No. 117 (2011-2012 Reg. Sess.), which retained the enhanced conduct credit formula but changed the effective date to October 1, 2011. (Former § 4019, subd. (h), as amended by Stats. 2011-2012, ch. 39, § 53.)

On September 20, 2011, Governor Brown signed Assembly Bill No. 1X 17 (2011-2012 1st Ex. Sess.), the current version of section 4019 (hereafter, the October 2011 amendment), which retains the enhanced conduct credit provision—four days is deemed to have been served for every two days spent in actual custody. (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 35; § 4019, subd. (f).) Subdivision (h) of section 4019 provides: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

B. *Parties' Contentions*

Defendant contends that she is entitled to additional conduct credits under section 4019. She acknowledges that the October 2011 amendment containing the favorable two-for-two conduct credit formula applies to defendants whose crimes were committed after October 1, 2011, a category within which she obviously does not fall. She contends, however, that the failure to give retroactive application to the October 2011 amendment

7

constitutes a violation of the equal protection clauses of the federal and state Constitutions (U.S. Const., 6th Amend.; Cal. Const., Art. I, § 7). She claims that she, as a defendant who committed crimes before October 1, 2011, but who was incarcerated after that date, "is similarly, if not identically, situated to an inmate who is in custody for committing a crime after October 1, 2011" and that the alleged disparate treatment between these two groups cannot be justified under a "compelling state interest." Therefore, she argues, in order to avoid a violation of equal protection, the October 2011 amendment should be given retroactive application in her case. Defendant therefore asserts that she should be awarded a total of 240 credits (i.e., an additional 60 days of conduct credits) in the Comfort Inn case and 84 credits (i.e., an additional 22 days of conduct credits) in the Walmart case.

The Attorney General responds that the October 2011 amendment to section 4019 was properly applied in a prospective fashion as delineated by the Legislature, and that such prospective application in defendant's case does not violate her equal protection rights.

C. *Equal Protection Challenge*

The first prerequisite for a successful equal protection argument is " 'a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.]" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199 (*Hofsheier*), quoting *In re Eric J.* (1979) 25 Cal.3d 522, 530.) This inquiry by the court "is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) The second requirement is that the challenger establish that there is no rational relationship to a legitimate state purpose for

8

the state's having made a distinction between the two similarly situated groups. (*Hofsheier*, at pp. 1200-1201.)[6]

Last year, our Supreme Court decided in *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*) that prospective application of the January 2010 amendment of section 4019 did not violate equal protection principles, concluding that amendment did not create two similarly situated groups. The Supreme Court noted that the "important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." (*Brown*, *supra*, 54 Cal.4th at pp. 328-329.)[7]

In *Kennedy*, *supra*, 209 Cal.App.4th 385, we addressed the identical equal protection challenge to the October 2011 amendment to section 4019 raised by defendant

---

[6] Of course, there are three potential standards by which to measure the challenged classifications under an equal protection analysis—strict scrutiny, rational basis, and an intermediate level of review applicable to gender classifications. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1200.) However, legislation is usually subjected to a rational basis analysis. (*Ibid.*) This is the appropriate analysis here. (See fn. 9, *post*.)

[7] In rejecting the defendant's equal protection claim, the high court in *Brown* distinguished two cases upon which the defendant relied (and upon which defendant here relies). In *In re Kapperman* (1974) 11 Cal.3d 542, 545 (*Kapperman*), the court held that former section 2900.5, which awarded presentence custody credit only to individuals delivered to the Director of Corrections by the statute's effective date, bore no rational relationship to a legitimate government purpose. The *Brown* court held that *Kapperman* was inapposite because it concerned only presentence *custody* credits, a very different circumstance from *conduct* credits. (*Brown*, *supra*, 54 Cal.4th at p. 330.) In *People v. Sage* (1980) 26 Cal.3d 498, 508 (*Sage*), the court held that a provision allowing presentence conduct credit for misdemeanants but not felons violated equal protection principles. The *Brown* court held that *Sage* did not stand for the proposition that defendants subject to the version of section 4019 predating the January 2010 were similarly situated with those receiving conduct credits under the January 2010 amendment. (*Brown*, at pp. 329-330.)

here. While we acknowledged that *Brown*, *supra*, 54 Cal.4th 314, involved a prior amendment to section 4019 (*Kennedy*, at p. 396), we rejected the defendant's contention that he—who committed his crime on March 11, 2011 (*id.* at p. 388)—was similarly situated with persons in jail who had committed crimes on or after the October 1, 2011 operative date of the challenged amendment to section 4019: "[T]he reasoning of *Brown* applies with equal force to the prospective-only application of the current version of section 4019." (*Id.* at p. 397; but see *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 53-54 (*Rajanayagam*) [distinguishing *Brown* by finding two groups were similarly situated with respect to equal protection challenge to October 2011 amendment]; *People v. Verba* (2012) 210 Cal.App.4th 991, 995-996 (*Verba*) [same].)[8]

Furthermore, the California Supreme Court, one month after deciding *Brown*, applied *Brown*'s analysis involving the January 2010 amendment to a defendant's argument that the October 2011 amendment should apply retroactively. Although addressed only in a footnote, the high court rejected the defendant's contention that the prospective application of the October 2011 amendment violated equal protection: "Today local prisoners may earn day-for-day credit without regard to their prior convictions. (See § 4019, subds. (b), (c) & (f), as amended by Stats. 2011, ch. 15, § 482.) This favorable change in the law does not benefit defendant because it expressly applies only to prisoners who are confined to a local custodial facility '*for a crime committed on or after October 1, 2011.*' (§ 4019, subd. (h), italics added.) [¶] Defendant argues the Legislature denied equal protection [citations] by making this change in the law expressly prospective. We recently rejected a similar argument in *People v. Brown* (2012) 54

---

**8** Although the *Rajanayagam* and *Verba* courts found that the "similarly situated" prong had been met, the defendants' equal protection challenges in both cases nonetheless failed because the courts found that a rational basis existed for the October 2011 amendment's disparate treatment of the two groups. (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 54-56; *Verba*, *supra*, 210 Cal.App.4th at pp. 996-997.)

Cal.4th 314, 328-330.) . . . Accordingly, prisoners who serve their pretrial detention before such a law's effective date, and those who serve their detention thereafter, are not similarly situated with respect to the law's purpose. (*Brown*, at pp. 328-329.)" (*Lara*, *supra*, 54 Cal.4th at p. 906, fn. 9.) We thus reject defendant's equal protection challenge because she cannot establish that she was similarly situated with persons who commit crimes on or after October 1, 2011.

Even were we to conclude that defendant is similarly situated with persons in jail who had committed crimes on or after the October 1, 2011 operative date of the challenged amendment to section 4019, her equal protection challenge fails. As noted, no equal protection violation will be found "if the challenged classification bears a rational relationship to a legitimate state purpose. [Citation.]" (*Hofsheier*, 37 Cal.4th at p. 1200.)[9] The court's inquiry is completed "[w]here there are 'plausible reasons' for [the classification]." (*Id.* at p. 1201.) As we held in *Kennedy, supra,* 209 Cal.App.4th at page 397, there is a plausible reason for the statutory classification challenged here.

As we explained in *Kennedy*: "[O]ur Supreme Court has acknowledged [that] 'statutes lessening the punishment for a particular offense' may be made prospective only without offending equal protection principles. (*Kapperman*, *supra*, 11 Cal.3d. at p. 546.) . . . [¶] In *People v. Floyd* (2003) 31 Cal.4th 179 (*Floyd*), the defendant sought to invalidate a provision of Proposition 36 barring retroactive application of its provisions for diversion of nonviolent drug offenders. (*Id.* at pp. 183-184.) The court reiterated that the Legislature may preserve the penalties for existing offenses while ameliorating

---

[9] Defendant argues that the classification here must satisfy the "compelling state interest" or strict judicial scrutiny standard (*Board of Supervisors v. Local Agency Formation Com.* (1992) 3 Cal.4th 903, 913) to survive the equal protection challenge. On the contrary, because the statutory distinction does not involve fundamental interests and is not based upon a suspect classification, the rational basis standard applies. (*Kennedy, supra,* 209 Cal.App.4th at p. 397.)

punishment for future offenders in order to ' "assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." ' (*Id.* at p. 190.) The statute before the court came within this rationale because it 'lessen[ed] punishment for particular offenses.' (*Ibid.*) As the *Floyd* court noted, ' "[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." [Citation.]' (*Id.* at p. 191.) [¶] 'The very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment.' (*People v. Lara* (2012) 54 Cal.4th 896, 906.) As our Supreme Court accepted in *Brown*, *supra*, 54 Cal.4th 314, 'to increase credits reduces punishment.' (*Id.* at p. 325, fn. 15.) [¶] We gather that the rule acknowledged in *Kapperman* and *Floyd* is that a statute ameliorating punishment for particular offenses may be made prospective only without offending equal protection, because the Legislature will be supposed to have acted in order to optimize the deterrent effect of criminal penalties by deflecting any assumption by offenders that future acts of lenity will necessarily benefit them. [¶] . . . [¶] Although the statute at issue here does not ameliorate punishment for a particular offense, it does, in effect, ameliorate punishment for all offenses committed after a particular date. By parity of reasoning to the rule acknowledged by both the *Kapperman* and *Floyd* courts, the Legislature could rationally have believed that by making the 2011 amendment to section 4019 have application determined by the date of the offense, they were preserving the deterrent effect of the criminal law as to those crimes committed before that date. . . . We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed." (*Kennedy, supra,* 209 Cal.App.4th at pp. 398-399, fn. omitted.)

Therefore, even had defendant satisfied the "similarly situated" requirement for an equal protection claim, her challenge to the October 2011 amendment nonetheless fails

because the classification between persons—those committing an offense prior to October 1, 2011, and those committing an offense on or after that date—bears a rational relationship to a legitimate state purpose. (*Kennedy, supra,* 209 Cal.App.4th at pp. 397-399; accord, *Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 54-56; *Verba*, *supra*, 210 Cal.App.4th at pp. 996-997.)[10]

### D. *Additional Challenge*

Defendant, apart from her equal protection challenge, argues that she should receive one-for-one conduct credits for all days she spent in custody after October 1, 2011, up through her sentencing on November 9, 2011. She bases this claim on an alleged "potential ambiguity" in the latest version of section 4019.[11] As argued by defendant, "[t]he first sentence of subdivision (h) appears to indicate that the new, two-for-one conduct credits apply only to jail inmates whose crimes were committed on or after October 1, 2011. However, the second sentence contradicts that interpretation because it is impossible to earn days in presentence confinement on an offense which had not yet been committed. Therefore, the second sentence is meaningless unless the more favorable credit rate applies to those in custody for crimes committed before October 1, 2011."

We rejected this argument in *Kennedy*, *supra*, 209 Cal.App.4th at pages 399 to 400. "We reiterate that according to the explicit language of the statute, the [October]

---

[10] We note that there are two cases, now depublished, addressing the question of retroactivity of the October 2011 amendment to section 4019 that are now pending before the Supreme Court; in those cases, the high court granted review and issued orders deferring briefing pending the finality of its decision in *Brown*, *supra*, 54 Cal.4th 314. (See *People v. Olague* (2012) 205 Cal.App.4th 1126, review granted Aug. 8, 2012, S203298; *People v. Borg* (2012) 204 Cal.App.4th 1528, review granted Jul. 18, 2012, S202328.)

[11] As defendant acknowledges, this "potential ambiguity" was discussed, and her argument here is based upon, a case that is now depublished. (See *Olague*, *supra*, 205 Cal.App.4th 1126, review granted Aug. 8, 2012, S203298.)

13

2011 amendment to Penal Code section 4019 applies only to crimes that were 'committed on or after October 1, 2011.'  (Pen.Code, § 4019, subd. (h).)"  (*Id.* at p. 399.)  We conclude that defendant is not entitled to the enhanced presentence conduct credits provided in the October 2011 amendment for the time that she was in custody after October 1, 2011 because of any perceived ambiguity in subdivision (h) of section 4019. (Accord, *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1552-1553.)

DISPOSITION

The judgment is affirmed.

_____

Márquez, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Grover, J.